UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL COLLADO,<br><br>         *Plaintiff,*<br><br>-against-<br><br>GURNEY PAYROLL COMPANY L.L.C., JIMMY JAZZ, INC., and JAKO ENTERPRISES LLC,<br><br>         *Defendants.* | Case No.<br><br>**RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, DANIEL COLLADO ("Plaintiff"), brings this action for damages and other legal and equitable relief against defendants GURNEY PAYROLL COMPANY L.L.C., ("Gurney") JIMMY JAZZ INC. ("Jimmy Jazz Inc."), and JAKO ENTERPRISES LLC ("Jako Enterprises", collectively the "Defendants" or "Jimmy Jazz") upon personal knowledge as to himself and upon information and belief as to others, for violations of New York State Labor Law ("NYLL"), New York Code, Rules and Regulations ("NYCRR") and any other causes of action that can be inferred from the facts set forth herein:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover underpayment caused by untimely wage payments, and other damages pursuant to New York Labor Law ("NYLL") for Plaintiff and similarly situated non-exempt hourly positions including but not limited to assistant sales managers, sales associates, cashiers, and similarly situated hourly positions (collectively, "Hourly Workers") who work or have worked for Defendants in Jimmy Jazz store locations in New York.

2. This lawsuit also seeks to recover unpaid uniform maintenance pay and spread of hours premiums pursuant to NYLL and New York Code, Rules and Regulations ("NYCRR") for Plaintiff and other Hourly Workers who worked for Defendants.

3. This lawsuit also brought by Plaintiff individually under NYLL for unlawful retaliation by termination by Defendants who terminated Plaintiff's employment in retaliation after Plaintiff reported his manager's threats to withhold wages and her mishandling of Covid-19 related sick leave after Plaintiff contracted Covid-19 and sought to request days off in order to comply with his doctor's orders.

## THE PARTIES

4. Plaintiff Daniel Collado is an adult, over eighteen years old, a citizen of New York State and resides in Kings Country, New York.

5. At all relevant times, Plaintiff is a covered individual within the meaning of the FLSA, U.S.C. §§ 206(a) and (207(a), and NYLL §§ 190(2) and 651(5).

6. Jako Enterprises, LLC is a foreign business corporation organized and existing under the laws of Pennsylvania. Jako Enterprises, LLC's principal executive office is located at 2030 Byberry Road, Philadelphia, Pennsylvania 19116. Jako Enterprises LLC's services of process address is listed in the care of Corporate Creations located at 600 Mamaroneck Avenue, #400, Harrison, NY 10528. Upon information and belief and based on publicly available information, Jako Enterprises, LLC's does business under the assumed name of SNIPES, a German-owned sneaker company, and purchased Defendant Jimmy Jazz, Inc's Jimmy Jazz trademark and its business assets in or around December 2021.

7. Jimmy Jazz, Inc. was founded in New York approximately 30 years ago, came to be based in Secaucus, NJ, and was operating around 170 store locations at the time it was purchased by Jako Enterprises. Defendant Jimmy Jazz, Inc. is listed in New York's Department of State, Division of Corporation ("DOS") records as a domestic business corporation with its principal executive offices and service of process address located at 85 Metro Way, Room 1025, SECAUCUS, NJ, 07094.

8. Upon information and belief, Defendant JIMMY JAZZ, INC is a New York domestic business corporation authorized to conduct and is conducting business within the State of New York and is the lessor, owner and operator of all nationwide Jimmy Jazz Facilities, including, but not limited to, the following locations ("collectively referred to hereinafter as the "Jimmy Jazz Locations" or "Facilities"): a) 520 Fulton Street, Brooklyn, NY 11201; b) 36 Graham Avenue, Brooklyn, NY 11206; c) 1264 Fulton Street, Brooklyn, NY 11216; d) 31-22 Steinway Street, Long Island City, NY 11103; e) 910 Flatbush Avenue, Brooklyn, NY11226; f) 5110 5th Avenue, Brooklyn, NY 11220; g) 1587 Pitkin Avenue, Brooklyn, NY 11212; h) 46 Belmont Avenue, Brooklyn, NY 11212; i) 239 W 125th Street, New York, NY 10027; j) 132 W 125th Street, New York, NY 10027; k) 148 Dyckman Street, New York, NY 10040; l) 620 W 181st Street, New York, NY 10033; m) 2942 3rd Avenue, Bronx, NY 10455; n) 989 Southern Blvd, Bronx, NY 10459; o) 101 E 170th Street, Bronx, NY 10452; p) 66 E Burnside Avenue, Bronx, NY 10453; q) 224 E Fordham Road, Bronx, New York 10458; r) 163-23 Jamaica Avenue, Jamaica, NY 11432; s) 421 Knickerbocker Avenue, Brooklyn, New York 11237.

9. Defendant Gurney Payroll Company, L.L.C., does not appear to have a New York DOS entry. According to New Jersey state business records, Gurney Payroll Company, L.L.C. is a foreign limited liability company formed under the laws of New Jersey with its principal business address located at 85 Metro Way, Secaucus, NJ, 07094 and a service of process address listed in the care of RAP SPORT INC located at 85 Metro Way, Secaucus, NJ, 07094. Defendant Gurney Payroll Company, L.L.C. is the entity on Plaintiff's W2 with an employer address of 75 Metro Way, Secaucus, NJ 07094.

10. Jimmy Jazz sells retail clothing and fashion accessories throughout the United States.

11. Defendants share centralized management and control.

12. Defendants operate stores under the brands Jimmy Jazz, Snipes and other.

13. For example Jimmy Jazz and Snipes are described in Defendants' marketing materials as: "If you searched Jimmy Jazz this morning and were redirected to the SNIPES website you may be wondering where Jimmy Jazz went. Well, Jimmy Jazz is officially part of the SNIPES family".

14. All the stores share suppliers and vendors.

15. Employees are assigned to work at various stores as necessary by management and do not have to be screened or hired when moving from one store to another.

16. Each Defendant had the power to hire and fire employees like the Plaintiff, and set those employees conditions of work, including all conditions related to pay and job duties.

17. Defendants are considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

18. Defendants maintained control, oversight, and direction over Plaintiff and the proposed class in regards to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

19. Defendants, by virtue of ownership, management, and control over the wages and work of Plaintiff and the proposed class, are considered an employer under the NYLL §190(3).

20. Defendants apply the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices, and procedures with respect to frequency of payment of wages.

21. Upon information and belief, at all relevant times, Defendants have had an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against

the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

23. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

24. The Defendant is subject to personal jurisdiction in New York as it does business in New York.

25. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

## NEW YORK CLASS ACTION ALLEGATIONS

26. The Proposed Class is defined as:

> All non-exempt hourly employees working for in Defendants' retail stores in the State of New York between the date six years preceding the filing of this complaint and the date a class is certified in this action.

27. Plaintiff hereby states that the Class Period shall to the extent permitted by law be expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar orders, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

28. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

29. There are more than 200 class members and the Plaintiff's claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

30. Plaintiff and the Proposed Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct.

31. Defendants' corporate-wide policies and practices affected everyone who worked in a childcare location in the same way.

32. Plaintiff is able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

33. Plaintiff is represented by attorneys who are experienced and competent to bring this action.

34. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

35. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

> 1. What job duties are performed by employees at Defendants' stores in New York?
>
> 2. What is the frequency of pay for the employee?
>
> 3. Does the employee spend at least 25% of the time at work engaged in physical labor?
>
> 4. What were the characteristics of any annual wage and periodic wage notices provided to the employee?

5. Whether Defendants required a uniform?

6. Did Defendants offer to wash the uniform?

7. Did the employee receive uniform maintenance pay?

8. How many hours per week did the employee work?

9. What was the employee's hourly rate of pay?

10. Did the employee work more than ten hours per shift?

11. Did the Defendants pay the employee spread of hours pay for each day they worked in excess of ten hours?

## STATEMENT OF FACTS

36. Plaintiff pleads the below facts according to his best recollection. Plaintiff reserves the right to amend and supplement these pleadings upon receiving discovery in this matter, including employee payroll records that Defendants are required to retain for six years under the NYCRR.

37. Upon information and belief, these facts are consistent among Plaintiff and members of the Proposed Class.

38. Plaintiff Daniel Collado was employed by Defendants as a sales associate on or around September 5, 2020, until on or around August 17, 2021.

39. Plaintiff worked for Defendants full time in three of their sneaker and clothing stores in Brooklyn on a full time basis, being paid approximately $15 per hour, paid on a bi-weekly basis.

40. The three retail stores where Plaintiff worked were all managed by Defendants' centralized management office which handles employee functions at their New York retail stores. It was branded Jimmy Jazz and located at 421 Knickerbocker Avenue, Brooklyn, NY 11237. Another was branded Hyperactive and located at 417 Knickerbocker Avenue, Brooklyn, NY 11237 (this store operated under the brand "Hyperactive"). And he worked at a third location which was at 36

Grand Avenue, Brooklyn, NY 11205.  Plaintiff was moved from one location to the other without being hired or screened for different locations. The same policies and practices applied at each location.  And employees of all the locations moved freely from one to another and at other locations operated by Defendants.  The stores where Plaintiff worked had a common management and Plaintiff was paid and scheduled the same way by the same managers.

41. Plaintiff's job duties consisted of general sales help assisting customers, folding clothes, receiving merchandise, stocking merchandise in the store room and replenishing items on the sales floor, as well as performing general cleaning tasks.

42. Well over 25% of Plaintiff's shift consisted of physical tasks, qualifying him as a Manual Worker under New York Labor Law.  Despite this, Plaintiff was paid on a bi-weekly basis at all times.

43. Plaintiff was a full time employee for Defendants.

44. Plaintiff and the Proposed Class were paid at or near minimum wage at all times.  For instance, Plaintiff was paid the New York City minimum wage of $15 per hour when he began his employment in September 2020.

45. On a regular basis during Plaintiff's employment, often every week, Defendants required him to arrive to work at the stores' opening times of 9 am until close at 9 pm, a spread of twelve hours.

46. Despite working a spread of hours greater than ten hours in a given work shift, Defendants failed to pay Plaintiff the required spread of hours pay of one additional hours' pay for each shift worked in excess of ten hours.

47. Defendants required Plaintiff and the proposed class to wear a uniform consisting of a T-shirt emblazoned with Defendants' logo.

48. Plaintiff's rate of pay was always at or below the applicable minimum wage for a

large employer in New York City on a weekly basis accounting for all compensation owed, including uniform maintenance pay.

49. Plaintiff was required to wear a uniform at all times while employed by Defendants.

50. Plaintiff did, in fact, wear the uniform every shift.

51. Defendants did not launder Plaintiff's required uniforms, nor did Defendants offer to launder the required uniforms.

52. Plaintiff's uniform was issued by Defendants to Plaintiff for the express benefit of Defendants and it was a condition of Plaintiff's employment to wear it in a clean condition during each shift.

53. Defendants never paid any uniform maintenance pay.

54. Plaintiff was entitled to additional pay for time spent off the clock and money spent in laundering and maintaining Defendants' uniforms.

55. Because of Defendants' improper compensation policies, Plaintiff was deprived of pay, in direct violation of the NYLL

56. Defendants implemented a policy across all of its locations and for all employees which is the same policy Plaintiff was subject to–requirement of a work uniform; no option for employer to launder the uniform; and no uniform maintenance pay.

57. Plaintiff and the proposed class members spent at least 25% of the time performing physical tasks that qualify them as Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

58. Because of Defendants' improper compensation policies, Plaintiff was deprived of timely and weekly pay, in direct violation of the NYLL.

59. Defendants' untimely wage payments cost Plaintiff the time value of money and negatively impaired the ability to save, invest, and plan for the future as well as harmed his ability

to pay regular expenses such as groceries, transportation costs, and monthly bills in a timely manner.

60. During the time of his employment, Plaintiff had to pay late several bills as a result of Defendants' untimely wage payments, resulting in fees, increased interest, potential negative credit rating effects, and compensatory loss.

61. This pattern of conduct was continuous throughout Plaintiff's employment.

62. Defendants' unlawful conduct has been widespread, repeated, and consistent

**Unlawful Retaliation Against Plaintiff**

63. In or around late March or early April of 2021, Plaintiff became sick with Covid-19, was symptomatic, and not well enough to return to work. He followed his doctor's advice at the time as well as the prevailing public health information for symptomatic Covid-19 infections and isolated for a period of 14 days to avoid spreading the illness to his coworkers and customers.

64. Plaintiff's store manager, Crystal Lopez ("Lopez"), contacted him while he was out sick on quarantine to pressure him to return to work early, but Plaintiff refused. Lopez also contacted Plaintiff and another coworker to tell them that they would not be paid for any of their time out of work unless they each wrote a letter stating that they had not contracted Covid-19 while at work.

65. Defendants only paid Plaintiff for one of the two weeks for which he was out of work sick with Covid.

66. On or around April 5 or 6, 2021, Plaintiff contact NYC's 311 number to complain that Defendants were refusing to pay for all of his sick time while he was sick with Covid-19, were trying to make him return to work while he was still sick which would expose others, and that they were threatening to not pay him unless he wrote a letter stating that he had not contracted Covid-19 while at work.

67. Also on or around April 5 or 6, 2021, Plaintiff attempted to contact Defendants' HR Department, but he did not have their number, so he called Jimmy Jazz's customer service number which connected him to their HR Department who then took his complaint. Plaintiff repeated the same complaints in paragraph 65 and specifically named his store manager, Crystal Lopez.

68. Upon returning to work around mid April 2021, Plaintiff learned that his complaint had reached Defendants' district manager, Jessie (last name unknown) who in turn told Plaintiff's direct manager, Lopez.

69. Plaintiff was warned by a coworker around May or June 2021 that "Crystal is mad at you, she wants to fire you because you made a complaint against her."

70. After Plaintiff was out sick with Covid-19 and he made a Complaint against his store manager Crystal Lopez, Lopez began to retaliate against Plaintiff beginning in late April or early May by cutting his hours. Whereas before making his complaint, Plaintiff would work between 35 and 40 hours per week, he was now working between 25 and 30 hours per week.

71. Lopez also began to speak to Plaintiff in a derogatory manner, including in front of customers. On one occasion around June 2020 when Plaintiff brought up a minor work issue, in front of customers Lopez told Plaintiff "If you don't like the job you can fucking leave."

72. Defendants terminated Plaintiff's employment in August 2021.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION:

### On behalf of Plaintiff and the Class
### Violation of the New York Labor Law - Failure to Pay Timely Wages

73. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein..

74. The timely payment of wages provisions NYLL § 191 and its supporting regulations

apply to Defendants and protect Plaintiff and the Proposed Class.

75. Defendants failed to pay Plaintiff and Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

76. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

77. All of Defendants' hourly non-exempt workers in their retail stores are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

78. As such, the failure to provide wages owed to Plaintiff and all others similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Associates. Contr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

79. Defendants' conduct also constitutes an "injury in fact" suffered by Plaintiff and the New York Class under Article III that is within the federal judicial power because Plaintiff and the New York Class have "suffered an injury in fact that is concrete, particularized, and actual or imminent." *See Caul v. Petco* (infra).

80. Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants compensatory damages in an amount to be determined in this action, plus the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SECOND CAUSE OF ACTION:

**On behalf of Plaintiff and the Class**
**Violation of the New York Labor Law - Unreimbursed Uniform Maintenance Costs**

81. Plaintiff realleges and reavers each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

82. Defendants required Plaintiff and the Class to wear a uniform.

83. Defendants did not launder Plaintiff's or the Class's required uniforms, nor did Defendants offer to launder them.

84. Plaintiff and the Class's uniforms were issued by Defendants for the expressed benefit of Defendants and it was a condition of their employment to wear them during each shift.

85. Defendants never paid Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

86. Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendants required.

87. The hourly rate paid by Defendants to Plaintiff and the Class was either the applicable minimum wage, or a rate that although above the minimum wage was effectively below the minimum wage when calculating the unpaid uniform maintenance pay.

88. Defendants' conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order for Miscellaneous Industries and Occupations

## THIRD CAUSE OF ACTION

**On Behalf of Plaintiff and the Class**
**Violation of the New York Labor Law - Unpaid Spread of Hours Pay**

89. Plaintiff alleges and re-alleges all of the other paragraphs contained herein.

90. Defendants employed Plaintiff and the Proposed Class members within the meaning of New York Labor Law §§ 2 and 651.

91. Plaintiff and the Proposed Class were and are entitled to receive spread of hours pay of one additional hours' pay at the applicable minimum rate for each hour worked in a given day or workshift in excess of ten hours. Defendants failed to pay Plaintiff and the Proposed Class members the required spread of hours pay.

92. Defendants failed to properly disclose or apprise Plaintiff and the Proposed Class members of their rights under the New York Labor Law.

93. Due to the Defendants' New York Labor Law violations, Plaintiff and the Proposed Class members are entitled to recover from Defendants the difference between their actual wages and the amounts that were owed under the New York Labor law. The deficiency accounts for minimum wage for all straight time hours, overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

94. Plaintiff and the Proposed Class members are also entitled to liquidated damages pursuant to New York Labor Law§ 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act

**FOURTH CAUSE OF ACTION**

**On Behalf of Plaintiff and the Class**
**Violation of the New York Labor Law – Failure to Provide Wage Notices**

95. Plaintiff realleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

96. Defendants willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as their primary

language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. (emphasis added)

97. Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

98. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiff with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive damages.

## FIFTH CAUSE OF ACTION

### On Behalf of Plaintiff Individually
### Retaliation in Violation of NYLL § 215

99. Plaintiff realleges and re-avers each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

100. After Plaintiff complained to Defendants about unpaid wages and improper behavior and threats by his store manger, calling NYC's 311 line and calling the Defendants' HR Department and engaged in other protected activity by refusing to return to work early and expose his coworkers to illness, Defendants retaliated against Plaintiff by cutting his hours, verbally berating him in public, and terminating his employment in violation of New York Labor Law.

101. As a direct and proximate result of Defendants' unlawful retaliation in violation of NYLL § 215, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, loss of enjoyment of life, damages to his reputation, loss of job security, loss of employment, and loss of wages, incurring damages thereby.

102. Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the, for which Plaintiff is entitled to an award of compensatory damages including back pay, front pay, emotion injury, and physical injury, plus liquidated damages, and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, respectfully requests that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this action, to the Proposed and Rule 23 Classes;

B. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C. Designation of Plaintiff Collado as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

D. An award for unpaid wages under NYLL, plus prejudgment interest;

E. an award of liquidated damages in the amount of the unpaid wages;

F. liquidated damages for late wages;

G. an award of statutory penalties pursuant to NYLL 198,

H. an award of compensatory and punitive damages to Plaintiff Collado for unlawful retaliation;

I.   attorneys' fees and costs; and

J.   granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: December 14, 2023
New York, NY

**LAW OFFICE OF MOHAMMED GANGAT**

_____
Mohammed Gangat, Esq.
675 Third Avenue, Suite 1810
New York, NY 10017
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiff*